DEES, et ux v. CULLISON, et ux.

Circuit Court, Marion County.

October 12, 1955.

Greene, Ayres & Greene, Ocala, for plaintiffs.

Green & Bryant, Ocala, for defendants.

T. G. FUTCH, Circuit Judge.

This is a mortgage foreclosure growing out of a partnership formerly existing between the plaintiffs Dees and his wife and the defendants Cullison and his wife. Dees and his wife sold their interest in the partnership to the Cullisons. The notes which are secured by the mortgage here involved represent all or part of the purchase price of the Dees' interest in the partnership.

Evidently the partnership (a sausage company) both before and after the dissolution between the Cullisons as purchasers and Dees and his wife as sellers was engaged in rather high financing and had considerably more casings spread than it had financial meat to fill. At any rate, the Cullisons after purchasing the Dees' interest got behind in their payments (apparently to all creditors) and secured a 6 months extension for the making of payments. The stakes were too large for such an arrangement to be known simply as an "extension," so the parties involved applied the high finance term "moratorium."

There are other mortgages, but we are concerned only with the purchase money mortgage from the Cullisons to John B. Dees and Alice B. Dees, his wife. This mortgage secured two notes. One note was for the principal sum of $28,000, payable to Alice B. Dees. All payments due on this note appear to have been paid in full and on time, giving due allowance to the 6 months moratorium.

The other note secured by the mortgage was for the principal sum of $16,500 payable to the order of John B. Dees in monthly instalments. This note also became subject to the 6 months moratorium.

The mortgage carried a regular grace period of 3 months, which with the moratorium made a total grace period of 9 months during which the Cullisons were not required to make payments on either the note to Alice B. Dees or the note to John B. Dees.

The mortgage included a special provision that, should default be made in the payment of any instalment on either note beyond the 3 months grace period provided in the mortgage, then the holder of either of the notes, whether both notes were in arrears or not, could at his or her option or at the option of either or both of the holders declare all sums of money remaining unpaid on both notes immediately or thereafter due and payable, and proceed to foreclose the mortgage.

About the time of the expiration of the moratorium, in an independent transaction, John B. Dees borrowed $6,000 from one J. M. Roquemore evidenced by his promissory note for that amount dated September 28, 1953, due and payable in 5 equal annual instalments of $1,200 each, with interest payable, in addition to the annual instalments, at 5% per annum, and at the same time John B. Dees assigned to Roquemore the Cullison note for $16,500, together with his interest in the mortgage securing the same as collateral security for the payment of the $6,000 note.

The Cullisons were duly advised by Roquemore of this assignment and that they were to make payments to him on the John B. Dees note. The Cullisons made no payment to Roquemore and under date of February 18, 1954 Roquemore had his attorney advise them that unless payments were made he would foreclose. Here the matter stood until on or about June 7, 1954 when the defendant, A. T. McNeal, Jr., came into the picture and purchased Dees' $6,000 note from Roquemore and received from Roquemore by proper endorsement and assignment the $6,000 note and the collateral security.

To this point there is no dispute as to the facts.

The cause came before the court on motion of the plaintiffs Dees and wife for a summary decree of foreclosure.

At the hearing the court found that there was no dispute of fact between the parties except on the question whether payments were in arrears on the $16,500 note from the Cullisons to John B. Dees (secured by the mortgage) and now held by McNeal as collateral security.

Two questions of law were found in dispute, to-wit: (1) The right of John B. Dees to exercise the option to foreclose if payments on the note were in arrears, and (2) The right of either John B. Dees or Alice B. Dees to foreclose under the facts stated.

The facts which give rise to the dispute as to whether or not the Cullison note to John B. Dees was in default are that the defendant McNeal testified that he told the Cullisons that, if he could *buy the mortgage and the two notes* held by Roquemore, he, McNeal, would lend the Cullisons enough money to bring the payments up to date. He and the other defendants stand on his promise to the Cullisons to lend them the necessary money to bring the payments up to date and his *purchase of the* $6,000 *note* from Roquemore as constituting payment of the 13 instalments then delinquent and unpaid on the note from the Cullisons to John B. Dees.

In other words, McNeal claims to have made a loan of $1,950 covering 13 payments due on the note made to Dees by the Cullisons without disturbing his pocketbook, his bank account or any other asset owned by him. He testified that no payment of any sort was made by the Cullisons to him; that no credit was given Dees on his note for $6,000 originally made to Roquemore and purchased by McNeal and no credit was entered on the $16,500 note from the Cullisons to Dees secured by the mortgage. If a financial transaction could be made in this manner, then anyone could lend money whether or not he had it to lend. The note for the $6,000 from Dees to Roquemore (and sold by Roquemore to McNeal) was not due and payable, either as to principal or interest, at the time McNeal claims he made the loan without disturbing his pocketbook, bank account or other assets.

McNeal stood in the position of trustee for Dees in relation to the collateral security which he held consisting of the Cullison note to Dees and the mortgage securing the note. It was his duty to credit the $6,000 note which he had purchased from Roquemore with any and all payments made by the Cullisons on the $16,500 note and also to credit any such payments on the $16,500 note as having been paid by the Cullisons. This would be true whether he loaned the money to the Cullisons to pay on the note or they made the payment to him from some other source. McNeal did not make any such credit on either note. It will be again noted for emphasis that McNeal did not pay the $6,000 note which Dees had made to Roquemore but that he *purchased* the $6,000 note and with it received from Roquemore the collateral security which Dees had given Roquemore to secure payment of the $6,000 note. It is supposed that he fancied himself collecting interest at 5% per annum from Dees on the $6,000 note, together with interest from the

Cullisons at the same rate on the $1,950 which he had promised to loan to the Cullisons.

The conclusion is inescapable that the note from the Cullisons to John B. Dees secured by the mortgage was in default to the extent of at least 11 instalments. Giving full credit for the 6 months moratorium and the 3 months grace period, at least 2 and possibly 4 instalments not staged by the moratorium and grace period were in default and the mortgage was subject to foreclosure at the option of John B. Dees.

As a general rule the pledgor has no right to foreclose or enforce collection on a chose in action which has been pledged as collateral security, but that rule holds good only where the pledgee is not hostile to the interest of the pledgor. In this case the pledgee was and is hostile to the interest of the pledgor and came into the picture with no purpose in mind other than to befriend the Cullisons at the expense of John B. Dees, the pledgor, prostituting his position as trustee for Dees. If necessary for the maintenance of this suit, which it was not, Dees could, because of this conduct by McNeal, exercise the right of foreclosure.

There can be no question, however, of the right of Mrs. Dees to foreclose as to the principal and interest of the note payable to her, and necessarily as to the principal and interest of the note payable to John B. Dees.

Attorneys for plaintiffs will prepare an appropriate decree of foreclosure which will be entered for principal and interest on both notes, reasonable attorneys' fees for foreclosure, and the costs of these proceedings. Affidavits from reputable members of the Ocala, Marion County Bar as to reasonable attorneys' fees may be submitted by all parties interested from which the court will determine the amount of attorneys' fees to be allowed to complainants' attorneys.